UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LARRY N.,[1]

        Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case. No. 3:18-cv-02239-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Larry N. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last name.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on June 4, 2015, alleging disability beginning on November 19, 2005. Tr. 90. His application was initially denied on November 9, 2015, and upon reconsideration on February 26, 2016. Tr. 89, 99. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 29, 2017. Tr. 33-88, 119-21. At the hearing, plaintiff amended the alleged onset date to his application date of July 16, 2015. Tr. 35. After receiving testimony from plaintiff and a vocational expert, ALJ Rudolph (Rudy) Murgo issued a decision on January 24, 2018, finding plaintiff not disabled within the meaning of the Act. Tr. 16-32. The Appeals Council denied plaintiff's request for review on November 28, 2018. Tr. 1-7. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533

F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 21.

At step two, the ALJ determined plaintiff suffered from the following severe impairments: diabetes with neuropathy, and mental health conditions described as post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), learning disorder, personality disorder, and cannabis use disorder. *Id.* The ALJ recognized that plaintiff also alleged nerve damage from a gunshot wound he suffered to his left arm in 2005, but concluded it was "nonsevere." *Id.* The ALJ found that although plaintiff complained of numbness in his left arm and an EMG showed signs of neuropathy in the left upper extremity, he was "not observed to have any significant clinical signs of neuropathy in the left upper extremity" and was "observed to have normal strength in the left upper extremity." *Id.* The ALJ also noted that plaintiff declined pain medication and used marijuana to treat his pain. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of

impairments that met or medically equaled a listed impairment. Tr. 22. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations: he can occasionally lift 20 pounds, frequently lift 10 pounds, he could stand and walk a combined six of eight hours, he could sit for six of eight hours. Tr. 24. While the ALJ found that plaintiff's gunshot wound "would not have more than a minimal impact on [his] ability to perform and sustain basic work activities," he created an RFC to "reasonably account for symptoms and limitations from the remote injury affecting the left upper extremity." Tr. 21. Specifically, the ALJ restricted plaintiff from "reaching with the left side, the non-dominant side, left in front or laterally, left overhead, left handling, left fingering, and left feeling are all frequent grip, grasp, twist, turn, pick, punch, pull, key, and fine and gross manipulations." Tr. 22. The ALJ believed plaintiff's "left upper extremity symptoms are . . . accounted for by limiting him to no more than frequent use of the left upper extremity for reaching, handing, fingering, feeling, and other such activities." Tr. 25. Finally, plaintiff was limited to "simple routine tasks (SVP 1-2), and superficial public contact; and no jobs requiring the person to do math, except with a calculator." Tr. 22.

At step four, the ALJ found plaintiff had no past relevant work. Tr. 27.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy including hand packager/inspector, electronic worker, and production assembler. Tr. 27-28. Thus, the ALJ concluded plaintiff was not disabled at any time from the application date, June 4, 2015, through the date of the written decision, January 24, 2018. Tr. 28.

**DISCUSSION**

Plaintiff argues that the ALJ: (1) improperly discounted his subjective symptom testimony; (2) erroneously assessed the medical opinion evidence of examining psychologist, Dr. Robert Weniger; and (3) failed to find his left arm neuropathy was a severe impairment. Plaintiff argues that, as a result of these errors, the case must be remanded for proper record development.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the

reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. Plaintiff makes a number of arguments regarding how the ALJ erred, which the court examines in turn.

### A.    Criminal History/Poor Work History

Plaintiff contends that the ALJ improperly discounted his testimony based on his statement to Dr. Weniger that his criminal history was a barrier to employment. Pl.'s Br. 15 (citing Tr. 537). The pertinent portion of the ALJ's decision reads as follows:

> The claimant had a poor work history before the alleged onset of disability and he reportedly stopped working due to his 2005 gunshot wound and a subsequent incarceration (see 2E, and 8F/4). *He told an examining psychologist that he believed his criminal history would be a barrier to employment* (8F/4). *This implies that his current unemployment may be related to a nonmedical consideration.*

Tr. 24 (emphasis added).

The ALJ failed to account for the full scope of plaintiff's statements to Dr. Weniger. Plaintiff told Dr. Weniger that he was discouraged about his job prospects not only because

6 – OPINION AND ORDER

of his convictions but also "because I have nerve damage." Tr. 537. In fact, Dr. Weniger wrote that plaintiff's "predominant vocational impediment include, 'My arm.'" *Id.*

Moreover, the fact that employers are not hiring plaintiff because of his criminal history does not negate the fact that he also suffers from an arm injury that affects his ability to work. Otherwise stated, plaintiff suffers from two barriers to employment—his criminal background *and* his arm injury. Additionally, the ALJ's conclusion is curious in light of the fact that, during the hearing, he asked plaintiff if "part of the reason you thought you couldn't get a job was your criminal history," but then advised him that Portland job applicants "don't check the box," i.e., "Portland's big about allowing people to get hired who may have served their time." Tr. 55. Where the ALJ himself minimized plaintiff's criminal history as a reason he could not find employment, it was inconsistent to hold it against him.

The ALJ also mischaracterized the record regarding plaintiff's "poor work history." An ALJ may find that a claimant's poor work history undermines the claimant's testimony regarding inability to work. *Thomas*, 278 F.3d at 959 (holding claimant's poor work history showed she had "little propensity to work in her lifetime," which undermined her symptom testimony). Here, the record reflects that plaintiff worked full-time for one year at a metal warehouse, was a reasonably reliable worker with no history of tardiness or absenteeism, and only left that job because of his gunshot injury and subsequent incarceration. Tr. 40, 194, 537. Additionally, while incarcerated, plaintiff performed limited work that accommodated his left-arm impairment, Tr. 55, and after his release from prison, worked with vocational rehabilitation services to try and find employment. Tr. 548-54. This record does not support the finding that plaintiff lacked the propensity to work.

7 – OPINION AND ORDER

### B. Work With Vocational Counselor

Plaintiff also takes issue with the ALJ's finding that he "appears to be working with vocational rehabilitation services to obtain job placement, which is somewhat inconsistent with his allegations of complete disabling physical and mental symptoms." Pl.'s Br. 16; Tr. 25. However, only the ability to sustain full-time work is inconsistent with a finding of disability. *See* 20 C.F.R. § 416.945 ("[The RFC] is the most [a claimant] can still do despite [his] limitations."); SSR 96-8p, 1996 WL 374184, at *1 (in formulating the RFC, the ALJ must assess "an individual's ability to do sustained work-related physical and mental activities . . . 8 hours a day, for 5 days a week"). Here, the vocational counselor opined that plaintiff's work "[l]ikely needs to be part-time (20-25 hours at the beginning) because of fatigue from many sources including chronic pain, obesity and obstructive sleep apnea." Tr. 548. Notably, the vocational counselor wrote that plaintiff would function "essentially as a one armed worker" because his "left arm is not able to assist on any manipulation" and use of the left arm "would increase his pain." *Id.* The vocational counsel further noted that plaintiff "exhibited several cognitive, emotional, and interpersonal challenges that will represent impediments to competitive employment." Tr. 550. Thus, the ALJ's reliance on plaintiff's work with a vocational counselor was not a clear and convincing reason to reject his testimony.

### C. Failure to Seek Treatment and Conservative Treatment

Plaintiff takes issue with the fact that the ALJ discredited his subjective symptom testimony because his diabetes improved with insulin and diet changes. Pl.'s Br. 16 (citing Tr. 25). Plaintiff does not dispute that his diabetes improved, but argues that his diabetes is unrelated to his left-arm neuropathy and his mental health, which constitute the crux of his

claims. *Id.* Indeed, plaintiff's effective treatment of diabetes is not a clear and convincing reason to discredit his subjective symptom testimony regarding his left-arm neuropathy and mental health limitations. Therefore, the court focuses the analysis on the ALJ's rejection of plaintiff's subjective symptom testimony regarding his left arm and mental health.

### 1. Physical Impairments

The ALJ rejected plaintiff's testimony regarding his left-arm neuropathy because after he was released from prison in 2013, he did not seek treatment until late 2014. Tr. 25; *see* Tr. 332-34. The ALJ also noted that plaintiff was able to use marijuana to manage his pain, and cited a report from January 29, 2015, showing that "he has normal, 5/5, strength in all extremities." Tr. 25 (citing Tr. 396). The ALJ further noted that "[a]fter 2015, the evidence does not document any follow-up evaluation or treatment of his . . . neuropathy." Tr. 25. The ALJ concluded that "[t]he relatively weak objective evidence, the routine and conservative course of treatment for . . . neuropathy, . . . strongly suggests the claimant's physical symptoms would not interfere with his ability to perform or sustain work activities at the light exertional range." *Id*.

"[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti*, 533 F.3d at 1039 (9th Cir. 2008)) (internal quotation marks omitted). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. . . ." *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff argues that the ALJ failed to explain why his failure to seek treatment is

significant in light of Dr. Burroughs' conclusion on July 16, 2015, that his left-arm mono-neuropathies were likely permanent and "all that was left . . . was palliative and conservative care."[2] Pl. Br. 17, ECF #22. Plaintiff cites SSR 16-3p for the proposition that "a claimant may properly decline ongoing medical care when a medical source has advised that there is no further effective treatment to prescribe." *Id*.

The Commissioner contends that Dr. Burroughs' July 16, 2015 findings do not explain plaintiff's initial failure to seek treatment after his release from custody in mid-2013. However, plaintiff has alleged an onset date of July 16, 2015. Tr. 35. Thus, his failure to seek treatment before that date is not a clear and convincing basis to reject his testimony. *See Ortiz v. Colvin*, No. CV 13-9259-AS, 2015 WL 3823932, at *4 (C.D. Cal. June 19, 2015) (finding the ALJ's reliance on plaintiff's noncompliant treatment-based upon medical reports that predated the alleged onset date was not a clear and convincing basis for discounting plaintiff's credibility).

Moreover, contrary to the ALJ's finding, the record indeed contains medical records after 2015 documenting that plaintiff's left arm neuropathy became worse over time. Tr. 610-38. A July 9, 2015 medical report indicates plaintiff "continues to suffer chronic pain in left arm and numbness in left pinky" with "7/10 intermittent stinging pain in 4th and 5th digits with touching and certain movements make entire arm go numb and needling pain all the way up the arm." Tr. 639. "He now has pain down from wound in upper arm down into 4th and 5th digits," and "has constant numbness, and nerve pain." *Id*. "[O]xycontin did not

---

[2] Plaintiff states that Dr. Taylor wrote the medical opinion from July 16, 2015, but the Commissioner points out, and the court agrees, that this medical record was written by Dr. Burroughs. *See* Tr. 309. Despite plaintiff's error in naming which doctor wrote the medical record, the court finds the issue remains the same and analyzes it as such.

10 – OPINION AND ORDER

work." Tr. 639. Further, an October 26, 2017 medical report shows "new pain" in plaintiff's left thumb and "[left] hand numbness . . . in 2nd through 5th digit." Tr. 610. Thus, the purported lack of medical treatment for plaintiff's physical impairments was not a clear and convincing reason to reject plaintiff's subjective symptom testimony.

### 2. Mental Impairments

The ALJ found that the record shows "little mental health treatment and few reports of symptoms to healthcare providers." Tr. 25. The ALJ also noted plaintiff did not seek "evaluation or treatment of his mental symptoms from a mental health specialist, and the evidence does not show any significant mental health treatment from his primary care provider." *Id*.

Although plaintiff delayed obtaining treatment for his mental health symptoms, the Ninth Circuit has found "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the record contains evidence that plaintiff has suffered a lifetime of trauma, including exposure to gang violence and incarceration. This has resulted in a "pervasive distrust of others given his historical adversities." Tr. 534-36. On September 27, 2016, plaintiff confided to his examining psychologist, Dr. Weniger, "you guys are the only ones I ever told about this stuff." Tr. 538. Additionally, plaintiff admitted to his vocational counselor that "he had difficulty accepting he has mental illness." Tr. 563. Because the record reflects that plaintiff has struggled to discuss and accept his mental health symptoms, plaintiff's failure to seek mental health treatment is not a clear and convincing reason to reject his subjective symptom testimony.

The ALJ also found plaintiff's complaints of "anxiety in crowded situations and

11 – OPINION AND ORDER

isolating from others" were inconsistent with treatment notes stating plaintiff had "excellent social skills." Tr. 25.  However, the notation that the ALJ relies upon comes from an isolated chart note related to diabetes treatment, not a mental health appointment.  Tr. 388.  This fleeting, isolated notation is an insufficient rationale to discount plaintiff's testimony.  *See Navarro v. Colvin*, No. 6:14-CV-00811-AA, 2015 WL 2401352, at *4 (D. Or. May 18, 2015) (holding ALJ's reference to isolated incident is not a sufficient rationale to discount plaintiff's credibility).

### D.  Activities of Daily Living

Finally, the ALJ found plaintiff's activities of daily living were "less limited than would be expected given his allegations of disabling symptoms and limitations."  Tr. 26.  The ALJ noted that plaintiff's function report described "some physical difficulties with activities such as attending to his personal needs, preparing meals, and doing housework."  *Id*.  The ALJ observed that plaintiff did not report these difficulties to his healthcare providers, and instead told them he "supervised three children, did cooking and shopping for healthy meals, and had a 'rigorous workout schedule.'"  *Id*.  The ALJ also noted that when plaintiff described his trips to stores, he "did not indicate any anxiety or other mental interference with this activity."  *Id*.  Further, plaintiff indicated that he drove his mother's car, did "some house and yard work including mowing a yard for about 45 minutes," and took a vacation to Palm Springs in May 2015.  *Id.*  The ALJ concluded that plaintiff's "level of functioning in activities of daily living is generally inconsistent with the extent of his alleged physical and mental symptoms and limitations and supports finding that he is capable of performing light work, simple tasks, and can handle superficial public interactions, as accounted for in the residual functional capacity."  *Id.*

12 – OPINION AND ORDER

An ALJ may invoke activities of daily living in the context of assessing symptom testimony to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ failed to show how plaintiff's activities of daily living demonstrated transferable work skills. For instance, the ALJ provides no explanation why plaintiff's ability to drive to the hearing and vacation in Palm Springs were either inconsistent with his subjective symptom testimony or translated to activities that could be performed within a competitive work environment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Plaintiff's attempts at leading a normal life do not prevent him from receiving disability benefits. *Molina*, 674 F.3d at 1112-13 (holding a "claimant need not vegetate in a dark room to be eligible for benefits") (citation omitted).

Also, importantly, the ALJ did not address plaintiff's testimony that he was no longer doing the activities noted in his medical examinations, i.e., he did not care for his minor child because that child did not live with him, his mother did most of his grocery shopping, he worked out four hours a day *before* his injury, and it took him 45 minutes to do yard work because he had to take frequent breaks. Tr. 47, 55-56, 58, 60-61, 64. Plaintiff did explain he occasionally went grocery shopping with his mother, but he would "try not to go" because he struggled being around "too many people" and "too much noise." Tr. 64. Thus, plaintiff's limited activities of daily living were not clear and convincing reasons to

13 – OPINION AND ORDER

discredit plaintiff's subjective symptom testimony.

## II.     Medical Opinion Evidence

Plaintiff argues that the ALJ should have given greater weight to the medical opinion of examining psychologist Dr. Weniger.  Pl. Br. 13-15.  The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Dr. Weniger performed a psychological examination of plaintiff on September 27, 2016. Tr. 534-47.  During his evaluation, Dr. Weniger found plaintiff scored in the "lower boundary of the average range" on the Full Scale Intelligence Quotient, was in the average range of the Working Memory Index, and in the 8th percentile, or borderline range on the Processing Speed Index.  Tr. 539.  With respect to plaintiff's emotional functioning, Dr. Weniger found plaintiff's Clinical Personal Pattern Scales were "notable for paranoid, aggressive, and antisocial features," plaintiff "seems to respond to perceived threats with

expressions of hostility and aggression," and plaintiff "seems to struggle to conform his behavior to social norms." Tr. 541. Overall, Dr. Weniger diagnosed plaintiff with posttraumatic stress disorder, mild attention-deficit/hyperactivity disorder, mild specific learning disorder, with impairment in mathematics, a "Specified Personality Disorder with paranoid, aggressive, and antisocial features," and cannabis use disorder. Tr. 544.

The ALJ gave "[s]ome but less than great weight" to Dr. Weniger's opinion. Tr. 27. The ALJ found that "[m]ost of Dr. Weniger's remarks are recommendations for the claimant to benefit fully from vocational rehabilitation services, and are not actually opinions on [plaintiff's] capacity for mental work activities." *Id.* The ALJ further found that "[t]he remarks on [plaintiff's] difficulty with responding to workplace interpersonal demands, behavioral concerns, and benefiting from calm workplace environments are inconsistent with the lack of mental health treatment during the period at issue," and therefore "limits the weight given to these remarks as opinion evidence." *Id.* The ALJ found that the "remarks on [plaintiff's interpersonal skills and behavioral concerns are inconsistent with [his] description of himself as a 'good people person' and the observations of the claimant having excellent social skills." *Id.* However, the ALJ concluded that "[t]he remarks on [plaintiff's] cognitive challenges are supported by the clinical findings documented in the examination report, and some weight is given to these remarks as opinion evidence." *Id.*

As discussed above, plaintiff's lack of mental health treatment is not a clear and convincing, or a specific and legitimate reason, to discredit Dr. Weniger's opinion. The ALJ's reliance on an isolated reference to plaintiff's "excellent social skills" also was not a legitimate reason to discount Dr. Weniger's opinion.

15 – OPINION AND ORDER

Moreover, while plaintiff described himself to Dr. Weniger as a "good people person," Dr. Weniger found plaintiff was "highly guarded and vigilant regarding potential threats in his environment" and "tends to respond to perceived social threats with expression of hostility." Tr. 536-37. Dr. Weniger noted a recent interaction plaintiff had with his brother-in-law that turned into a "physical altercation" because plaintiff believed his brother-in-law responded to him "in an aggressive way." Tr. 535. Additionally, plaintiff admitted to participating in gang violence. Tr. 534-35. The inconsistencies the ALJ cites for discrediting Dr. Weniger's opinion are not supported, and the ALJ provides no additional reasons why his findings are correct. Overall, the ALJ failed to provide clear and convincing, or specific and legitimate reasons, for discounting Dr. Weniger's medical opinion, and therefore improperly discounted parts of Dr. Weniger's medical opinion.

### III.     Severe Impairment and RFC

Plaintiff argues that the ALJ's erred in failing to find that his left-arm mono-neuropathy was not "severe" at step two. At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); 20 C.F.R. § 416.920(c). An impairment is considered severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).

In finding that plaintiff's left-arm neuropathy was not severe, the ALJ noted that although "an EMG [(electromyography)] showed signs of neuropathy in the left upper

extremity," plaintiff "was not observed to have any significant clinical signs of neuropathy in the left upper extremity." Tr. 21 (citing Tr. 309). The ALJ also noted that "plaintiff was observed to have normal strength in the left upper extremity," "declined medication," and "used marijuana to treat his pain symptoms." *Id.* Thus, the ALJ concluded, "[t]he objective evidence and course of treatment support finding that this condition would not have more than a minimal impact on the claimant's ability to perform and sustain basic work activities." *Id.*

However, plaintiff's vocational counselor explained that due to plaintiff's left arm neuropathy he would function "essentially as a one armed worker" because his "left arm is not able to assist on any manipulation" and use of the left arm "would increase his pain." Tr. 548. Medical reports from 2016 and 2017 also showed plaintiff's left arm neuropathy continued to trouble him, and that he was experiencing new left arm pain, including pain in his thumb. Tr. 610, 621. Finally, plaintiff testified to completing household tasks with one arm because every time he tried to use his left arm the pain "flares right up." Tr. 63, 68. Thus, the record supports a finding that plaintiff's left arm neuropathy was severe because it would significantly limit his ability to perform basic work activities. The ALJ therefore erred at step two.

An error at step two can be considered harmless if an ALJ nonetheless considers at subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment. *See Lewis*, 498 F.3d at 911. The ALJ partially considered plaintiff's left arm limitations in functioning the RFC, but he failed to consider all of plaintiff's impairments, specifically failing to give proper weight to plaintiff's subjective symptom testimony regarding his physical and mental limitations. Therefore, the ALJ's error at step two is not

17 – OPINION AND ORDER

harmless.

**IV.     Step Five**

Because the ALJ erred at step two and failed to properly credit plaintiff's subjective symptom testimony and Dr. Weniger's medical opinion, the ALJ failed to fashion an RFC that accurately reflects plaintiff's limitations, and therefore the Commissioner failed to meet his burden at step five.

**V.     Remand**

Plaintiff does not request a remand for the immediate payment of benefits; therefore, the court need not conduct a credit-as-true analysis.  As discussed above, the ALJ's decision included a number of errors.  First, the ALJ improperly discounted plaintiff's subjective symptom testimony regarding his left arm neuropathy and mental health limitations.  Second, the ALJ improperly discredited Dr. Weniger's medical opinion regarding plaintiff's mental health limitations.  Finally, the ALJ failed to find plaintiff's left arm neuropathy was a severe impairment at step two.  These errors led to the ALJ fashioning an RFC that did not capture plaintiff's physical and mental limitations.  Accordingly, the court remands for further administrative proceedings to: (1) re-evaluate plaintiff's symptom testimony, (2) properly examine Dr. Weinger's opinion, (3) re-evaluate plaintiff's severe impairments at step two, and (4) conduct any additional necessary proceedings, including, but not limited to, reassessing plaintiff's RFC, and determining whether plaintiff can perform other work in the national economy.

//

//

//

18 – OPINION AND ORDER

**ORDER**

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED May 5, 2020.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

19 – OPINION AND ORDER